**GEORGIA PACIFIC CORPORATION, et al.**

v.

**SIGMA SERVICE CORPORATION.**

Civ. A. No. 81–246–B.

United States District Court, M. D. Louisiana.

June 4, 1982.

R. Gordon Kean, Jr., Gary A. Bezet, Sanders, Downing, Kean & Cazedessus, Baton Rouge, La., for plaintiff Georgia Pacific Corp.

Linda G. Ashe, Gold, Little, Simon, Weems & Bruser, Alexandria, La., for plaintiff Roy O. Martin through Dura-Wood Treating Co.

John M. Landis, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for plaintiff L.B. Foster Co.

Leon Gary, Jr., Gary & Field, Baton Rouge, La., for defendant.

POLOZOLA, District Judge:

This matter is before the Court on appeal by Georgia Pacific Corporation (GP), Dura-Wood Treating Company (Dura-Wood) and L.B. Foster Company (Foster) from two orders of the bankruptcy judge issued on January 26, 1981 and February 10, 1981, directing the turnover of certain funds to the debtor-in-possession, Sigma Service Corporation (Sigma).

Sigma was the general contractor for a rail facility construction job which was to be performed in Crossett, Arkansas under a contract with GP. Dura-Wood sold certain materials to Sigma which were to be used on this construction job and was to be paid pursuant to an agreement with Sigma and GP. Under this agreement, GP would issue a check payable jointly to Sigma and Dura-Wood, and, thereafter, Sigma would endorse the check and turn it over to Dura-Wood. Dura-Wood furnished materials worth $17,986.05 to Sigma. GP issued a check for $11,058.19 payable jointly to Sigma and Dura-Wood. Instead of endorsing the check and turning it over to Dura-Wood in accordance with the agreement, Sigma retained the check and filed a Chapter 11 proceeding in the United States Bankruptcy Court. Sigma now seeks the $17,986.05 from GP, thus relegating Dura-Wood to the status of an unsecured creditor.

Foster also sold materials to Sigma to be used in the Crossett, Arkansas construction job under an agreement which was similar to the agreement between Sigma, Dura-Wood and GP. Foster furnished materials worth $45,201.25, and GP issued a check for $13,756.61. Sigma retained the check and now seeks to have the order directing GP to turn over the entire $45,201.25 to Sigma, affirmed.

Sigma was also the general contractor under a contract with Mississippi Chemical Corporation for construction to be done in the State of Mississippi. Dura-Wood sold materials to Sigma to be used in this project worth $2,563.20. Prior to Sigma's filing of its Chapter 11 petition, the Birmingham Rail and Locomotive Company, one of Sigma's creditors which is not a party to these proceedings, sent a stop notice in accordance with applicable Mississippi law to the Mississippi Chemical Corporation. This notice was received by Sigma prior to the filing of its petition. Shortly after the petition was filed, Mississippi Chemical Corporation received a stop notice from Dura-Wood. The bankruptcy court ordered Mississippi Chemical Corporation to turn over all remaining contract funds to Sigma, holding that Dura-Wood's stop notice violated the automatic stay provided in 11 U.S.C. § 362, and further, that the debtor-in-possession has priority over the holder of an unperfected security interest. Dura-Wood appeals this order.

The issue before the Court is whether funds held by a contractor which will eventually be paid to satisfy materialmen's claims are the property of the contractor's bankrupt estate. In order to decide this issue, the Court must analyze how state law characterizes the property interests involved in this appeal.

The trustee in bankruptcy succeeds only to the title and rights in property that the debtor possessed. *South Central Livestock Dealers, Inc. v. Security Stock Bank of Hadley, Texas,* 614 F.2d 1056 (5 Cir. 1980). Where bankruptcy law deals with property rights regulated by state law,

federal courts will look to the state law and state court decision to determine what those property rights are. *Chicago Bd. of Trade v. Johnson,* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1923).

Thus, in this case, the Court must look to the state laws in Arkansas and Mississippi to determine the rights of the parties herein.

Arkansas Stat. Ann. Sect. 51–601 provides in pertinent part:

> Every, . . ., person who shall, . . ., furnish any material, . . ., for any building or upon land, . . ., for repairing same, under or by virtue of any contract with the owner . . . thereof, or his, . . ., contractor or subcontractor, . . ., shall have for his, . . ., materials, . . ., furnished a lien upon such building, . . ., and upon the land belonging to such owner, . . . . Any original or principal contractor . . . who shall be paid the contract price . . ., and who shall fail or refuse to discharge the liens created by this section to the extent of the contract price received by him, shall be deemed guilty of an offense and punishable as follows: . . .

Mississippi Code, Section 85–7–181 provides in pertinent part:

> When any contractor or master workman shall not pay any person who may have furnished materials used in the erection, construction, alteration, or repair of any . . . [real property], the amount due him to any subcontractor therein, or the wages of any journeyman or laborer employed by him therein, any such person, subcontractor, journeyman or laborer may give notice in writing to the owner thereof of the amount due him and claim the benefit of this section; and thereupon, the amount that may be due upon the date of the service of such notice by such owner to the contractor or master workman, *shall be bound in the hands of such owner for the payment in full, or if insufficient, then prorata, of all sums due such person, subcontractor, journeyman or laborer who might lawfully have given notice* in writing to the owner hereunder, . . . . [emphasis added.]

The Court has carefully reviewed the jurisprudence which have interpreted statutes similar to those involved in Mississippi and Arkansas. One of the leading cases in this regard is *In Re D & B Elec., Inc.,* 4 B.R. 263 (Bkrtcy. W.D. Ky. 1980).

In *In Re D & B Elec., Inc.,* supra, the trustee and a materialman, Rueff Lighting Company, were both asserting claims to uncashed checks made jointly payable to Rueff and the bankrupt, D & B Electric. The court held that under Kentucky law, funds in the hands of general contractors are held in trust for the benefit of materialmen, and that the funds represented by the uncashed checks were not property of the debtor subcontractor. Therefore, the Court held that the trustee had no claim to the funds. The court's discussion of this issue accurately summarizes this area of the law and is set forth below:

> Our discussion heretofore would lead the reader to believe that the trustee will prevail. That is not to be the case. There is an alternative theory of law, recently and vigorously embraced by the Sixth Circuit Court of Appeals, which shifts the balance of equities in favor of Rueff.
>
> [11] Despite its inability to claim title as an equitable lienholder superior to that of the trustee, Rueff's position as an unpaid materialman causes the creation of a trust for its benefit of funds in the hands of the general contractors, thereby bypassing D & B's estate entirely. In effect, the funds are not, nor will they ever become, D & B's property, and the trustee can therefore lay no claim to them.
>
> This result derives from observance of recent decisions which portend a judicial preference toward treating as a trust fund those monies held by general contractors to be paid eventually to satisfy materialmen's claims, obviating the assertion of any claim by the trustee of a bankrupt subcontractor.
>
> Two recent Sixth Circuit decisions mainfest cogent public policy considerations for conferring upon a materialman the status of a beneficiary, rather than that

of a mere creditor, in assessing its claims vis-a-vis a bankrupt subcontractor's trustee.

\* \* \* \* \* \*

[F]ederal bankruptcy courts in a variety of situations have refused to apply the property, preference and statutory liens sections of the Bankruptcy Act to favor unsecured creditors over the equitable claims of subcontractors and materialmen to the proceeds of a construction project in the hands of a bankrupt contractor.

State builders trust statutes simply recognize in statutory form the principles embodied in these court decisions. The remedies provided by mechanic's lien laws are unsatisfactory, and state legislatures in a number of states, like Michigan, have adopted builders trust fund statutes. The property rights created by these state statutes should be recognized and enforced in the bankruptcy system. The trustee in bankruptcy should not be permitted to appropriate the trust of another and distribute it to the bankrupt's creditors.

[12] While we seize upon the public policy rationale that underpins the Selby and Parker decisions, we observe that the strength of that reasoning would be attenuated in the absence of a statute from which a trust fund could be inferred. Put simply, we as a bankruptcy court must interpret, not make, state law.

\* \* \* \* \* \*

Unlike the Michigan Builder's Trust Fund Act, the provision cited above does not expressly establish a trust fund for the benefit of unpaid materialmen. However, such construction should be implied from the forceful wording of the act (coupled with criminal penalties for non-compliance), as well as the strong public policy preference of trust fund theory enunciated in Selby.

Further, deference to Kentucky judicial construction of the act mandates its characterization as creating a trust fund. The Kentucky case upon which we rely, while not a bankruptcy case nevertheless indicates a judicial inclination toward be-

stowing property rights upon unpaid materialmen in excess of mere lien rights.

\* \* \* \* \* \*

To cling to nomenclatural stricture by refusing to apply trust fund status to funds in the hands of a contractor because Kentucky's statute fails to designate such funds as being held "in trust" would subvert the well-reasoned conclusions of our circuit court's decisions in Selby and Parker. The act's function should not be suppressed by superficial deference to its imprecise language. The Kentucky law clearly vests in materialmen a property right exceeding any other interest it may have as an ordinary creditor.

Since we are bound to apply Kentucky law, we cannot deny Rueff its property right and allow its derogation to the status of unsecured creditor. We must respect and preserve its right as beneficial owner of funds held presently by the general contractors.

This decision is not rendered in a jurisdictional vacuum. Other cases outside the Sixth Circuit have also imposed a trust fund on funds held by contractors. Those decisions and the ones herein reflect judicial recognition of construction industry practicalities.

[16] Our finding that Rueff is the beneficiary of a trust administered by the general contractor dispels the necessity of discussing the merits of the trustee's contention that any arrangement between Rueff and the generals should have been approved by D & B. We hold that since D & B was to be merely the conduit for payments that would eventually pass to Rueff, its assent was not required.

The decision reached in *In Re D & B Elec., Inc.,* supra, is supported by other cases from other jurisdictions. In *United States v. Durham Lumber Company,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960), the federal government and certain subcontractors were asserting competing claims to money owed a bankrupt taxpayer under a general construction contract. The

Fourth Circuit Court of Appeals had ruled that under North Carolina law, the bankrupt general contractor's interest in the fund consisted merely of a right to the residue of the fund after the payment of the subcontractors. The Supreme Court affirmed, noting that under North Carolina law: (1) subcontractors who have not been paid by the general contractor have a direct cause of action against the owner to the extent of any amount due under the general construction contract; (2) money owed by the owner under the construction contract must first be used to satisfy the subcontractors claims of which the owner has notice; (3) the general contractor, before receiving payment, must furnish the owner with a statement of all sums due subcontractors, and the failure to do so is a misdemeanor; and, (4) an owner with notice of a subcontractor's claim who pays the general contractor is still liable to the subcontractor. The Court held that, based on these considerations, the general contractor did not have a property interest in the face amount of the general contract. The subcontractors' claims prevailed over the government's claims. In *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), a companion case to *Durham*, the Court reached a similar result in the context of a determination of the priority of a federal tax lien over the claims of materialmen to funds held by the general contractor.

The Sixth Circuit Court of Appeals' decision referred to *In Re D & B Elec., Inc.*, supra, namely, *Selby v. Ford Motor Co.*, 590 F.2d 642 (6 Cir. 1979) and *Parker v. Klochko Equipment Rental Co., Inc.*, 590 F.2d 649 (6 Cir. 1979) cert. denied, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979) held that funds subject to the Michigan Builders Trust Fund Act were not property of the general contractor's bankrupt estate, so that the claims of the subcontractors and materialmen prevailed over the claims of the trustee. The Second, Eighth and Ninth Circuits have also reached similar results. Thus, in *In Re J.V. Gleason Co.*, 452 F.2d 1219 (8 Cir. 1971), the court held that the equitable subrogation claim of a surety, which, after the bankrupt contractor defaulted, completed performance on the contracts and paid the claims of the laborers and materialmen, prevailed over the claim of the trustee in bankruptcy. In *Jackson v. Flohr*, 227 F.2d 607 (9 Cir. 1955), cert. denied, 350 U.S. 947, 77 S.Ct. 322, 100 L.Ed. 826 (1956) the Ninth Circuit held that where the owner gave the bankrupt contractor a check payable jointly to the bankrupt contractor and the subcontractor, and the subcontractor, who had a materialmen's lien against the owner's property under the Washington statutes, had secured the contractor's endorsement and cashed the check, the payment to the subcontractor was not a voidable preference. The court reasoned that the funds represented by the check never became part of the bankrupt's estate. In *Carrier Corp. v. J.E. Schecter Corp.*, 347 F.2d 153 (2 Cir. 1965) the court held that New Jersey law provided that payments made to the general contractor are held in trust for the benefit of the subcontractors and materialmen and therefore are not property in which the general contractor has an interest other than as trustee.

In *Limperis v. Material Service Corporation*, 415 F.Supp. 65 (N.D. Ill. 1976) the trustee in bankruptcy for a general contractor brought an action to recover sums allegedly paid by or on behalf of the contractor to a materialman within four months of bankruptcy. It had been agreed between the materialman, the bankrupt contractor and the builder that: (1) out of each monthly draw contemplated by the construction contract, a separate check would be issued by the builder payable to the order of the contractor for the purpose of paying for the materials furnished by the materialman; (2) while the check was in the possession of the builder, the contractor would endorse the check payable to the order of the materialman; and, (3) the builder would then notify the materialman that the check was ready to pick up and the materialman would pick up the check at the builder's office. The court held that under Illinois law, the funds represented by the check never were property in which the contrac-

tor had an interest and never passed into the bankrupt estate of the contractor.

In *In Re H.G. Prizant & Co.,* 257 F.Supp. 145 (N.D. Ill. 1965) the trustee brought suit to recover funds paid by the bankrupt general contractor to a subcontractor prior to the bankruptcy. The subcontractor had agreed to refrain from enforcement of its lien rights in return for the payment. The court stated:

> "Where, as here, funds are turned over to a debtor for the special purpose of paying same to a third party to whom they are due, a court of equity is free to act to achieve the intended result." 257 F.Supp. at 147.

The court held that the subcontractor would not be deprived of its lien, and, that even if the subcontractor were held not to have a lien, the court was prepared to "impress an equitable lien or trust upon said funds." 257 F.Supp. at 147.

Finally, in *Stone v. Mondie,* 157 F.Supp. 929 (W.D. Okl. 1957) the builder-owner, upon learning of the financial difficulty of the general contractor, paid the subcontractors and materialmen directly. Oklahoma law provided that the risk of all payments by the owner to the general contractor would be upon the owner, and payment by the owner to the subcontractor would be deemed payment to the general contractor. The court held that the payments did not constitute a voidable preference and stated:

> "The trustee cannot urge unfair preference where the complained of payments in reality did not come from the bankrupt's assets thereby diminishing the estate." 157 F.Supp. at 931.

■ As noted earlier, the trustee in bankruptcy succeeds only to the title and rights in property that the debtor possessed. The cases cited above show that where state law either expressly or impliedly establishes a trust fund for the benefit of materialmen and subcontractors, the federal bankruptcy courts will recognize that the bankrupt estate does not have any beneficial interest in the trust fund.

Furthermore, the bankruptcy courts have extended these principles outside the building industry and have applied them to any situation where state law would recognize a constructive trust or equitable lien. Thus, in *In Re Angus,* 9 B.R. 769 (Bkrtcy. D. Or. 1981) the insurer, which had paid $5,689 to the insured for the loss of the insured's ring, sought recovery of the ring after it was found by the insured. The bankruptcy court held that the insured, who received payment from the insurer through a mutual mistake of fact and who then filed her bankruptcy petition, held the ring in constructive trust subject to the equitable rights of the insurer, which had the beneficial interest in the trust. Thus, the court held the insurer was entitled to the ring. Applying the above principles to the facts before the Court, the Court makes the following findings.

■ In the Crossett, Arkansas construction job, Sigma seeks to have GP turn over $17,986.05 which represents payment by GP for materials furnished by Dura-Wood for the construction job, and $45,201.25 which represents payment by GP for materials furnished by Foster. The statutory provisions in Arkansas, like the Kentucky statute in *In Re D & B Elec., Inc.,* supra, does not expressly establish a trust fund for the benefit of materialmen. However, "[t]o cling to nomenclatural stricture by refusing to apply trust fund status to funds in the hands of a contractor because [Arkansas's] statute fails to designate such funds as being held 'in trust' would subvert the well-reasoned conclusions" of the decisions previously discussed in this opinion. *In Re D & B Elec., Inc.,* supra, 4 B.R. at 270. Such a construction can be implied from the forceful wording of the Arkansas statute, especially the provision which makes it a crime for the general contractor to fail to pay the materialman once the general contractor has been paid. Clearly, the Arkansas statute vests the materialman with rights greater than the ordinary creditor, since the criminal laws of the state stand behind the obligation imposed upon the general contractor. Since Sigma has no beneficial interest in the funds held by GP, the claim of Sigma must be denied. Thus, the bank-

ruptcy court's decision to the contrary must be reversed.

■ With regard to the construction job for Mississippi Chemical Corporation to be performed in Mississippi, Sigma seeks to have Mississippi Chemical Corporation turn over $2,563.20 which represents payment by Mississippi Chemical Corporation for materials furnished by Dura-Wood for the construction. Once Birmingham Rail and Locomotive Company sent the notice required by 85–7–181 of the Mississippi Code, the funds held by Mississippi Chemical Corporation became bound in its hands. The words used in the Mississippi statute are sufficient to impress a constructive trust upon the funds with Dura-Wood holding the beneficial interest. The statute states that once the notice is given, amounts due the materialman are "bound in the hands of the owner for payment in full" of the materialman's claim. The Court finds that the statute describes a trust relationship. Therefore, Sigma's claim against Mississippi Chemical Corporation must be denied and accordingly, the decision of the bankruptcy court holding to the contrary must be reversed.

Therefore:

For reasons set forth above:

IT IS ORDERED that the orders of the bankruptcy court requiring Georgia Pacific Corporation and Mississippi Chemical Corporation to turn over to Sigma the sums of $63,187.30 and $2,563.20 respectively, be and they are hereby REVERSED AND SET ASIDE. This case is hereby remanded to the bankruptcy court for further proceedings in accordance with this opinion.

Judgment shall be entered in accordance with this opinion.