**KEENAN PIPE & SUPPLY COMPANY, a corporation, Appellant,**

v.

**B. E. SHIELDS, as Trustee in Bankruptcy of James T. Inman, Appellee.**

No. 14913.

United States Court of Appeals
Ninth Circuit.

Aug. 13, 1956.

---

488

John B. Petermann, Mark Watterson, Los Angeles, Cal., for appellant.

Vincent P. DiGiorgio, Thomas R. Davis, Bakersfield, Cal., for appellee.

Before HEALY and FEE, Circuit Judges, and SOLOMON, District Judge.

JAMES ALGER FEE, Circuit Judge.

A Trustee in Bankruptcy brought an action to recover as a preference $9,223.-03, on the theory that this sum was paid by James T. Inman, the bankrupt, who was a subcontractor under John H. Deeter, the principal contractor on the construction of extra work connected with the California Epileptic Hospital at Porterville, a State of California Public Works project, to Keenan Pipe & Supply Company, within four months of the filing of the petition in bankruptcy. However, it was alleged that Deeter made checks for moneys due Inman on this job payable jointly to Keenan and Inman, and the latter endorsed them to Keenan.

Keenan answered that it had furnished plumbing supplies, fixtures and equipment to Inman on this very project amounting, with interest, to $4,361.06, and that Deeter, the general contractor, and Inman, the subcontractor, agreed with Keenan that, if it waived all rights to the security of Section 1190.1 of the California Code of Civil Procedure, Deeter would issue joint checks to Inman and Keenan. It was set up that Keenan waived its rights, and the time had expired. It was further alleged that Keenan had furnished Inman, as plumbing contractor, with plumbing supplies on a job in Kern County in the sum of $12,-057.66, as a result of which Keenan was entitled to file a materialman's lien under Section 1193.1 of the California Code to the extent of $1,280.53 on a specific construction on described real estate in Kern County on which Deeter was principal contractor.

The cause was tried by the court without a jury. The court found that Inman paid to Keenan $6,185.64 in two payments of $5,416.63 and $769.01 within four months of the filing of a petition in bankruptcy; that Keenan was a creditor of Inman; that Keenan had reasonable cause to believe Inman insolvent when the payments were made. The court also found that (1) the payments were on account of an antecedent debt, (2) these resulted in a depletion of the estate of Inman, and (3) Keenan was thereby enabled to obtain a greater percentage of his debt than some other creditor of the same class. The court concluded that the transfers were voidable preferences under Section 60 "of the Act relating to Bankruptcy." Judgment was entered for the Trustee in the sum of $6,185.64 plus $541.24 interest.

The court did not find affirmatively or negatively upon the defense set up by Keenan. This was error in view of the testimony and other evidence in the record. This Court holds the last three findings of fact clearly erroneous as to a portion of the sums paid by Deeter. This Court holds erroneous the conclusion that all of these payments constituted voidable preferences.

The California Public Works Bond Act[1] was adopted in accordance with public policy recognized in practically all jurisdictions of this country of protecting persons who furnish material or perform labor which actually goes into a project constructed under public authority. It is made the duty of the contractor and the subcontractor to pay the materialman and the laborer in most of these statutes.[2] Various procedures are provided to enforce this obligation, if not voluntarily performed.[3]

By the statutes of California, the laborer or materialman has a right within a certain time (1) to file a Stop Notice or Verified Notice to Withold on a California Public Work job,[4] or (2) he may file action against the principal contractor and his surety upon the Labor and Material bond filed under the mandatory provisions of the Act.[5]

These provisions were adopted in order fully to protect the laborer and materialman in accordance with the general public policy above mentioned. The ordinary Mechanic's Lien Law gives a lien upon the private property upon which labor is done or material furnished from the time of performance or supplying thereof.[6] But it has always been considered improper to permit encumbrances against public property of a state.[7] Therefore, the device has been

adopted of placing a mandatory obligation to pay materialmen and laborers upon the prime contractor.[8] This does not mean, however, that the money paid him by the state is a trust fund in the hands of the contractor. But, if the prime contractor or the subcontractor dedicates a specified sum to pay to the laborer or materialman to discharge the obligation placed upon the contractor by law, no one else can assert any claim to the money so paid. This is true irrespective of the fact that the time may not yet have arrived for the materialman to take positive action by filing a Stop Notice or to take similar steps to collect. Of course, once the laborer or materialman has for a consideration agreed to take no such steps or his claim has been paid, he has no further right against the project, the contractor or the work.

The public policy to have the laborer and materialman paid for public works jobs is much stronger than that which underlies legislation to protect such parties on private projects, by which each is given a mechanic's lien which attaches from the time the labor or material goes into the project. But the rationale of all such legislation is the same. Therefore, a payment either by a principal contractor or a subcontractor to a materialman can be held valid either on the ground that the materialman surrendered his

---

1. Cal.Govt.Code, §§ 4200–4208.

2. Id., § 4204. " * * * the contractor's bond shall provide that if the person or his subcontractors, fail to pay for any materials * * * used in, upon, for or about the performance of the work contracted to be done * * * that the surety or sureties will pay for the same, in an amount not exceeding the sum specified in the bond * * *."

3. See Cal.Code Civ.Proc. §§ 1190.1–1192.1, stop notices; §§ 1193.1–1195.1, claims of lien; §§ 1196.1–1203.1, enforcement procedure.

4. Cal.Code Civ.Proc. § 1190.1. Section 1193.1 requires that notice of claim be given by persons other than the original contractor within thirty days from the acceptance of the work by the state.

5. Cal.Code Civ.Proc. § 1185.1; Cal.Govt. Code § 4206.

6. Cal.Code Civ.Proc. § 1181. Under § 1188.1, the lien accrues as of the date of the commencement of the building for which the materials were supplied. See Barrow v. Santa Monica Builders Supply Co., 9 Cal.2d 601, 71 P.2d 1108, and comment, 5 So.Cal.Law Rev. 312, 318 (1932).

7. Bloom, Mechanics Liens (1910) § 192.

8. Cal.Code Civ.Proc. § 1185.1, the contractor's bond shall be "conditioned for the payment in full of the claims of all persons * * * furnishing materials to be used in * * * such work"; see also § 1192.1, providing that a materialman on a public works job "whose claim has not been paid by the contractor", or the subcontractor, may file a stop notice.

right to file a lien or, as here, the Stop Notice, and received the payment as present consideration therefor or, on the other hand, that a valid contract had been made between the parties, the contractor, the subcontractor and the materialman whereby the materialman gave up his right to file the Stop Notice and the contractor and subcontractor agreed that, as a consideration therefor, the checks should be given to him.[9]

■ The finding that the payments were in consideration of a pre-existing debt is erroneous. The payments were made by Deeter, who is not shown to owe Keenan anything, but who had a statutory obligation to see that certain sums were paid. The distinction between the debt and the discharge of security must be observed. The difference between the mortgage and the promissory note which it secures is patent, but one payment will discharge both. There was a debt between Inman and Keenan, but the checks Keenan received in payment, although incidentally these discharged the debt, were to discharge the obligation created by the statute upon the contractor or, on the other hand, were based upon a present consideration as a result of a contract between all parties. A debt which is so secured or is discharged as a result of a present consideration is not an "antecedent debt" within the meaning of that term as used in the preference clauses of the Acts relating to bankruptcies.[10]

■ The finding that Keenan, as a creditor, was enabled to obtain a greater percentage of his debt than some other creditor of the same class is erroneous as to such a payment, because no other creditor is shown to have been in that same position. Many months before the petition in bankruptcy was filed, Keenan was in a preferred position. The contractor was under obligation to pay for all material Keenan had furnished for the state project, and Keenan had a right to file the Stop Notice if the payment was not made. No other creditor is shown to have been in that position.

■ Finally, it was found that the payment of the entire sums resulted in a depletion of the estate of James T. Inman. This is erroneous as to the check for $769.01, because that check never entered the estate of Inman. It was a payment made directly by Deeter to Keenan. If Deeter still owes Inman anything, the Trustee would be required to sue Deeter. It was by statute an obligation of Deeter, the contractor, to see that the material bills were paid. If he paid them directly, that is no concern of the Trustee. By no device can it be conceived that these moneys entered the estate of Inman.

■ There is a cogent argument likewise that the moneys from the check in the amount of $5,416.63, issued to Inman and Keenan jointly, did not come into the Inman estate either. If Deeter, in recognition of his obligation, had given to Inman a package containing that much money in specie with the purpose and intent of both that the exact sum was to be delivered to Keenan, the money would never have entered the estate of Inman. Likewise, the authorities say Deeter could have given his check to Inman and the latter could have deposited the money in his own account and issued his check to Keenan.[11] If the intent of both was to

9. Jackson v. Flohr, 9 Cir., 227 F.2d 607. This case arose under Washington law, which is different in some respects from that of California, but this principle is apparently the same.

10. 11 U.S.C.A. § 96, sub. a; Bankruptcy Act, § 60, sub. a.

11. See 2 Glenn, Fraudulent Conveyances and Preferences (Rev. Ed., 1940) § 403, quoted and followed in Jackson v. Flohr, 9 Cir., 227 F.2d 607. See also, In re Zaferis Bros. & Co., Ltd., 9 Cir., 67 F.2d 140, 141.

The instant case is to be distinguished from San Mateo Feed & Fuel Co. v. Hayward, 9 Cir., 149 F.2d 875, since in that case there was no evidence of an agreement that the owner's checks were delivered in payment of a direct obligation of the owner to the materialman, and no evidence of any intent upon the part of the prime contractor, the subcontractor or the materialman, such as is apparent here. In that case, also, the owner who was under no statutory compulsion paid the materialman.

transmit the money to Inman in satisfaction of the obligation of Deeter to Keenan, the money would not have entered the estate of Inman.

 There is a distinction between this case where the proceeding is adversary and one where a creditor attempts to enforce an inchoate lien in the bankruptcy court. There the property is in possession of the Trustee and the creditor must prove that the lien exists and attaches to some property so held or that a credit has been properly applied in his favor. Here the Trustee has no possession of the amounts paid. The money is held adversely by Keenan. In order to recover these sums, the Trustee must prove affirmatively all the facts by which he is entitled to recover. Three findings are here adjudged to be clearly erroneous. The facts as to the furnishing of the material should have been found to have determined whether there was a duty upon Deeter to pay the money to Keenan. It should also have been found whether there was not an agreement whereby the moneys were to be paid directly to Keenan and whether Deeter did not make the check jointly to Keenan and Inman with that intent on the part of the three concerned. There was evidence upon all these questions. But this Court is not empowered to make findings of fact. The matter is remanded as to the check for $5,416.63 for further findings.

As to the check for $769.01, it was paid directly from Deeter to Keenan. The findings as applied to this check were all clearly erroneous. There was no evidence to support the claim that this payment was a preference. The District Court is directed to dismiss the complaint as to this check.

Remanded for further proceedings in accordance with this opinion.