In re **FLOORING CONCEPTS, INC.,** **fdba Carpetman, Debtor.**

**SHAW INDUSTRIES, INC., Appellant and Cross-Appellee,**

v.

**David A. GILL, Trustee, Appellee and Cross-Appellant.**

**BAP No. CC 82–1290 VGAB. Bankruptcy No. LA–81–04745–RM. Adv. No. LA 81–3702–RM.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued May 19, 1983.

Decided April 4, 1984.

Richard W. Brunette, Jr., Sheppard, Mullin Richter & Hampton, Los Angeles, Cal., for appellant and cross-appellee.

David R. Weinstein, Danning, Gill, Gould & Joseph, Los Angeles, Cal., for appellee and cross-appellant.

Before VOLINN, GEORGE and ABRAHAMS, Bankruptcy Judges.

## OPINION

This is an appeal from the trial court's decision that certain payments made by a general contractor directly to the subcontractor-debtor's materialman constituted voidable transfers under § 547 of the Bankruptcy Code.

The trustee cross-appealed the trial court's decision that certain payments made by a general contractor to the debtor's laborers and to purchase additional carpeting were not preferential as to the materialman.

We REVERSE as to the appeal and AFFIRM as to the cross-appeal.

## I. FACTS

Konwiser Corporation ("Konwiser") was the general contractor for the construction of an apartment building known as the Daisy, which was under construction at the time this case arose. On or about September 25, 1980, Konwiser entered into a subcontract with the debtor, Flooring Concepts, Inc. ("Flooring Concepts"), for the installation of carpet at the Daisy. The subcontract called for the payment of $166,-850.28 by Konwiser to Flooring Concepts upon full performance of the subcontract.

Flooring Concepts purchased carpet on open account from the appellants, Shaw Industries, Inc. ("Shaw"), for installation at the Daisy, on or about May 21, 1980. Shaw thereafter furnished materials and services to the debtor. As of January 30, 1981, Shaw had not received payment thereon. Shaw therefore, on January 30, 1981, served Konwiser and the construction lender for the project with a Preliminary Twenty-Day Notice Under California Civil Code § 3097.[1] Service of the Twenty-Day Notice is a prerequisite to enforcing a materialman's lien rights under § 3097. The amount claimed by Shaw under the Twenty-Day Notice was $29,712.03.

In early February, 1981, the Debtor agreed that Konwiser could and would pay directly to Shaw all sums due, or coming due to the debtor under the contract between Konwiser and the debtor. On February 7, 1981, Shaw's counsel confirmed to the debtor's counsel that Konwiser would make

---

1. Cal.Civil Code § 3097 (West Supp.1983), as amended 1975, 1976 and 1979, provides as follows:

 "Sec. 3097. Preliminary 20-day notice (private work)

 'Preliminary 20-day notice (private work)' means a written notice from a claimant that is given prior to the recording of a mechanic's lien and prior to the filing of a stop notice, and is required to be given under the following circumstances:

 (a) *Written preliminary notice; parties*

 Except one under direct contract with the owner or one performing actual labor for wages, or an express trust fund described in Section 3111, every person who furnishes labor, service, equipment, or material for which a lien otherwise can be claimed under this title, or for which a notice to withhold can otherwise be given under this title, must, as a necessary prerequisite to the validity of any claim of lien, and of a notice to withhold, cause to be given to the owner or reputed owner, to the original contractor, or reputed contractor, and to the construction lender, if any, or to the reputed construction lender, if any, a written preliminary notice as prescribed by this section..."

payments to Shaw as agreed. This agreement will be referred to hereinafter as the "three-way agreement". Pursuant thereto, Shaw refrained from recording a materialman's lien against the Daisy. On February 13, 1981, the debtor executed a Security Agreement and Assignment of Accounts Receivable and a UCC–I Financing Statement in Shaw's favor. This Financing Statement was recorded on February 23, 1981. On February 23, 1981, the Debtor submitted a final bill to Konwiser and instructed Konwiser to make all payments due to the debtor directly to Shaw.

The following amounts were paid by Konwiser to Shaw pursuant to the three-way agreement:

| | |
|---|---|
| February 17, 1981 | $ 308.93 |
| February 17, 1981 | 2,676.84 |
| February 24, 1981 | 876.59 |
| April 10, 1981 | 13,755.51 |
| May 11, 1981 (post-petition) | 742.77 |

Two additional payments were made by Konwiser with respect to the carpet installation. The first payment by Konwiser, on February 13, 1981, was the sum of $6,000, which was paid into a trust held by debtor's counsel for the benefit of the debtor's employees. The debtor's attorneys then paid $5,123.41 to the debtor's laborers and the balance of $876.59 to Shaw February 24, 1981, pursuant to the three-way agreement as reflected above.

The second payment was made in exchange for additional carpeting supplied by Shaw to the debtor. On February 17, 1981, Konwiser transferred to Shaw $8,000 to pay for additional carpeting supplied to the debtor. Of the $8,000, $7,691 was the sales price for 1,628 square yards of carpeting. The balance of $308.93 was transferred to Shaw pursuant to the three-way agreement.

## II. RULING OF THE TRIAL COURT

The debtor filed a petition under Chapter 7 on April 20, 1981. On August 13, 1981, the trustee commenced an adversary proceeding to recover from Shaw the preferential transfers made under the three-way agreement, and the payments for labor and additional carpeting, as well as a post-petition payment of $742.77.

The trial court found that all of the payments to Shaw pursuant to the three-way agreement were preferential transfers. The court also allowed the trustee to avoid the $742.77 post petition transfer, although it did not specify whether this transfer was voidable because of its post-petition nature or as a preference. The court did not allow the trustee to avoid the payment of $5,123.41 to the debtor's employees, holding that this was not a transfer of the debtor's property to or for the benefit of Shaw on account of an antecedent debt. The court also held that the trustee could not avoid the transfer to Shaw of $7,691.07 for the additional carpeting, holding that this was a substantially contemporaneous exchange for new value.

The total of avoided payments amounted to $18,360.64. The court allowed 7% interest starting from the date the bankruptcy petition was filed, which amounted to $1,538.78.

Shaw appealed the trial court's decision voiding payments under the three-way agreement and providing for interest as of the date of filing rather than as of the date of initiation of the adversary proceeding. The trustee cross-appealed, claiming that the payments to laborers and to Shaw for additional carpeting should also be deemed voidable preferences.

## III. CONSIDERATIONS RELATING TO PREFERENCE

We first address the issue of whether payments under the three-way agreement prior to the filing of the petition in bankruptcy constituted voidable preferences under the Bankruptcy Code, 11 U.S.C. § 547(b). In order to avoid a transfer, the trustee must establish that all the elements of a voidable preference are present. 4 *Collier on Bankruptcy* ¶ 547.01 (15th ed. 1982).

### A.

■ The trustee must establish, *inter alia,* that the property transferred was "property of the debtor" as required by § 547(b). A transfer of money or property by a third person to a creditor of a debtor, that does not issue from the property of the debtor, is not a preference. 4 *Collier on Bankruptcy* ¶ 547.25 (15th ed. 1982). Whether or not property is within the estate of a debtor is a conceptual problem, the answer to which turns on the debtor's immediate or constructive ownership of the property in question. Another requirement, that the payment be on account of an antecedent debt, in this case is related to the concept of whether property enters the estate. While it appears that the payments were made by an account debtor of the bankrupt to a creditor of the bankrupt, in actuality, Konwiser made a new contract with Shaw, whereby Konwiser agreed to pay Shaw directly in exchange for Shaw's forbearance to further pursue its lien remedies. Shaw furnished independent consideration to Konwiser who thereby received the assurance that its property would be free of a materialman's lien, which Shaw had a right to pursue.

■ Payments made by a contract debtor of a bankrupt to a creditor of the bankrupt do not become part of the bankruptcy estate where there is an independent obligation on the part of the debtor to pay the creditor. *See Keenan Pipe & Supply Co. v. Shields,* 241 F.2d 486 (9th Cir.1956); *Selby v. Ford Motor Co.,* 590 F.2d 642 (6th Cir. 1979). In *Keenan,* court held that where a contractor issued a joint check to a materialman and an insolvent subcontractor, there was no preference to the materialman because the general contractor had an independent obligation to pay the materialman.

"... a payment either by a principal contractor or a subcontractor to a materialman can be held valid either on the ground that the materialman surrendered

his right to file a lien or, as here, the Stop Notice, and received the payment as present consideration therefor, or, on the other hand, that a valid contract had been made between the parties, the contractor, the subcontractor and the materialman whereby the materialman gave up his right to file the Stop Notice and the contractor and subcontractor agreed that, as a consideration therefor, the checks should be given to him." [2]

*See also Greenblatt v. Utley,* 240 F.2d 243 (9th Cir., 1956).

Appellees would have us distinguish *Keenan* on the grounds that *Keenan* involved a public works project, and the contractor had a statutory obligation under the California Public Works Bond Act [3] to pay materialmen and laborers, whereas the present case involves a private undertaking. However, the reasoning in *Keenan* is applicable where an owner or general contractor has a *contractual,* rather than a statutory duty to pay materialmen:

"The public policy to have the laborer and materialman paid for public jobs is much stronger than that which underlies legislation to protect such parties on private projects, by which each is given a mechanic's lien which attaches from the time the labor or material goes into the project. The rationale of all such legislation is the same." *Keenan,* 241 F.2d at 489.

### B.

■ From another perspective, the account ostensibly due the debtor could not have become part of the bankruptcy estate. Under California Civil code § 3153, the owner is entitled to withhold from the sum due the contractor, the amount of any lien for labor, services, equipment, or materials furnished to that contractor. The contractor, in turn, would have the right to deduct materialman's claims from any amount due

---

**2.** *Keenan, supra,* at 241 F.2d 489–490 (Footnote omitted)

**3.** CAL.GOVT.CODE §§ 4200–4208, enacted by Stats.1943, c. 134, p. 981, Stats.1959, c. 1594, p.

3935, § 1, 2, repealed by Stats.1969, c. 1362, p. 2783, § 5. *See,* CAL.CIV.CODE § 3247 (West 1974 and 1983 Supp.).

the debtor. California Civil Code § 3140 provides that any original contractor or subcontractor can recover, upon a claim of lien recorded by him, only the amount due him after deducting all claims of other claimants for labor, services, equipment, or materials furnished and embraced within his contract. Thus, the debtor could only have recovered the amount due him over and above Shaw's claim. *See In re Bel Marin Driwall v. Grover,* 470 F.2d 932 (9th Cir.1972). Where a subcontractor brings an action against a general contractor for the amount due on a contract, his rights cannot be determined until the amount, validity and sufficiency of materialman's liens has been ascertained. *See Hall's Air Conditioning & Plumbing v. Hicks,* 217 Cal.App.2d 315, 31 Cal.Rptr. 576 (Cal.Ct.App.1963).

### C.

 Appellee relies heavily on *In the Matter of Lucasa International, Ltd., Young v. Scandore Paper Box Corp.,* 13 B.R. 596, 598, 7 B.C.D. 1356 (S.D.N.Y.1981). In *Lucasa,* the court determined that payment by a debtor of the bankrupt to a creditor of the bankrupt was voidable, where the transferor had no independent interest in paying the creditor. *Lucasa* involved the sale of all the bankrupt's assets to a third party. A creditor of the bankrupt garnished the proceeds of sale; and the buyer paid the sheriff pursuant to the garnishment; no new consideration was given by the creditor to the vendee of the assets; the vendee had no independent interest in paying the creditor. It was of no concern to the buyer who received payment. There was no evidence that the buyer received any benefit from paying the judgment creditor, or that the judgment creditor surrendered any lien rights as consideration for receiving payment. *Lucasa* is for these reasons distinguishable from the facts at hand. The instant case may better be likened to the situation in *Keenan,* where the general contractor had such a relationship with the materialman, albeit involuntary, that it was in its own pecuniary interest to see that the materialman was paid.

### IV. CONSTRUCTION FUND CONTENTION

Appellees contend that Shaw has no claim to Konwiser's obligation to the debtor because of the effect of California Civil Code § 3264 which provides:

"The rights of all persons furnishing labor, services, equipment, or materials for any work of improvement, with respect to any fund for payment of construction costs, are governed exclusively by Chapters 3 (commencing with Section 3156) and 4 (commencing with Section 3179) of this title, and no person may assert any legal or equitable right with respect to such fund, other than a right created by direct written contract between such person and the person holding the fund, except pursuant to the provisions of such chapters."

This is a straw man argument. The amount owed by Konwiser was not a "fund for the payment of construction costs", as contemplated by § 3264, which was designed to protect construction lenders from claims of equitable liens. The payments made to Shaw were not made out of the construction loan fund, *per se.* They were payments made by the general contractor from its own funds to another creditor who, in effect displaced the insolvent subcontractor.

The problem which led to the enactment of Sec. 3264 originated in cases which held that an equitable lien could be imposed on a construction fund if either the borrower or the lender induced the subcontractor to rely on the fund for payment. The uncertainties created by this "loose doctrine" caused the 1967 California legislature to deal with "this problem by limiting the liens of subcontractors to those established by mechanics' lien law or contract." B.E. Witkin, 3 *Summary of California Law,* c. 7: Security Transactions in Real Property, § 20, pp. 1507–09 (8th ed. 1973). *See also* Gutierrez, California Civil Code Section 3264 and the Ghost of the Equitable Lien, 30 HASTINGS L.J. 493 (1979), at 515.

This is not a case where the materialman failed to exercise its statutory remedies in reliance on the existence of a construction loan fund. The materialman had no reason to rely on this fund, as it was paid directly by the contractor who was independently obligated to pay the lien. Having received payment, it would have been superfluous for Shaw to proceed further. Indeed, it was precluded from doing so because there was no debt remaining on which to file a lien.

This situation is not one for which § 3264 was designed. It is not a case where the materialman "slept on his rights," relying on an equitable lien against the construction loan fund. *Boyd & Lovesee Lumber Co. v. Modular Marketing Corp.,* 44 Cal. App.3d 460, 465, 118 Cal.Rptr. 699 (1975), cited by appellee, is distinguishable in that it involved an action by the materialman against a *lender* who had agreed to *provide construction funds.* Here payment was made by the general contractor because of its exposure caused by the subcontractor's failure to pay a materialman.

## V. POLICY CONSIDERATIONS

Our holding in this case is consistent with the policy of assuring payment to mechanics and materialmen.

The court in *Keenan,* while emphasizing legislative concern for assuring payment in public works, nevertheless encompassed private projects in its ruling. California, in its Constitution, Article XX, § 15, directs the Legislature to provide by law, for mechanics' and materialmen's liens and the "speedy and efficient enforcement of such liens."

The purpose of a Twenty-Day Notice is to enable the owner of an interest subject to encumbrance to provide for payment and to prevent attachment of the lien. In this case, the parties' actions accomplished such a purpose, and their actions were reasonably consistent with the statutory provisions for providing materialmen with an alternative source of payment.

A contrary policy would force materialmen to file stop notices and materialman's liens, even if the general contractor took steps to pay the materialmen directly. Parties involved in construction should not be obliged to resort to protracted action under the materialman's lien and Stop Notice provisions, where prompt settlement of the claim is in the best interests of all parties concerned.[4] The materialman's lien and Stop Notice remedies should be ones of last resort. A contractor and an unpaid materialman who are brought into privity by a defaulting subcontractor should not be involved in the useless pursuit of the lien where the debt it would secure can be or has been paid.

## VI. THE OTHER TRANSFERS

### A.

The question whether the post-petition transfer to Shaw of $742.77 may be avoided is governed by § 549 of the Bankruptcy Code. Again, this question necessarily turns on the issue of whether the funds were "property of the estate", as provided for by § 549(a). For the reasons discussed above, we hold that the transfer was not of "property of the estate", or for an antecedent consideration, and thus is not voidable by the trustee.

### B.

With respect to the payments of $5,123.41 made to laborers of the debtor, we affirm the trial court's decision that these were not transfers of the debtor's property to or for the benefit of Shaw on account of an antecedent debt owed by the debtor to Shaw. The laborers were the primary beneficiaries of these payments. Since Shaw did not receive these payments, the trustee cannot recover these amounts from Shaw.

## VII. THE CROSS APPEAL

We affirm the trial court's decision that the $7,691.07 payment to Shaw for additional carpeting is not a voidable preference. A payment is not voidable "to the

---

**4.** *See, Mullins v. Noland Co.,* 406 F.Supp. 206 (N.D.Ga.1975).

**964**

extent that such transfer was . . . in fact a substantially contemporaneous exchange." Bankruptcy Code § 547(c)(1)(B). This transaction was an exchange of new value (the carpeting) for payment thereof, and the trial court correctly refused to allow the trustee to avoid this payment.

### VIII. CONCLUSION

The judgment is reversed as to the transfers found to be voidable preferences and affirmed as to the transfers found not to be voidable preferences. Our disposition of the primary issues moots the question of interest.

The cause is remanded for proceedings consistent with this opinion.