In re JOHN WOLTERMAN CONCRETE COMPANY, INC. I.D. # 31–0940168, Debtor.

JOHN WOLTERMAN CONCRETE COMPANY, INC., Plaintiff,

v.

METRO DEVELOPERS AND CONTRACTORS, Defendant.

Adv. No. 1–84–0186.

United States Bankruptcy Court, S.D. Ohio, W.D.

July 23, 1985.

Richard M. Haines, Cincinnati, Ohio, William H. Howard, Dayton, Ohio, for Huntington Nat. Bank.

Edmund J. Adams, Cincinnati, Ohio, for Contractors Material Co.

Patrick D. Lane, Cincinnati, Ohio, for Metro Developers, Inc.

Harold Jarnicki, Lebanon, Ohio, trustee.

DECISION AND ORDER ON MOTION OF CONTRACTORS MATERIALS COMPANY, SUBCONTRACTOR

BURTON PERLMAN, Bankruptcy Judge.

The bankruptcy case underlying the present adversary proceeding was filed August 6, 1984 as a chapter 11 case. On February 25, 1985 the case was converted to chapter 7.

Debtor was a concrete contractor who would typically enter into a subcontract for the concrete work on projects undertaken by general contractors. In the course of fulfilling its subcontracts, debtor would purchase materials from material suppliers.

Soon after the bankruptcy case was filed, debtor filed the present adversary proceeding, naming as defendants therein as a group, the "General Contractors of John Wolterman Concrete Company, Inc." In its complaint, debtor asserts that it requires relief because general contractors have stopped making progress payments to debtor. The relief sought is an order directed to defendants to make direct progress payments and to turn over funds

to debtor for work done by plaintiff/debtor. The adversary proceeding was resolved so far as here pertinent by an Agreed Entry entered by this court on September 13, 1984. The parties involved in that Entry were debtor and Metro Developers and Contractors, Inc. (hereafter Metro.) The Entry was agreed to and signed by both these parties, and then submitted to the court for signature and entry. The Agreed Entry provided for an injunction against Metro requiring that they continue to make progress payments, paying:

"... to any designated supplier, material men, or subcontractor any funds due them for materials supplied and for work performed by any designated supplier, material men, subcontractor or laborer by payment in a joint check to "John Wolterman Concrete Company, Inc." and the designated supplier, material men, subcontractor or laborer. The Debtor and the designated supplier, material men, subcontractor or laborer shall furnish the Defendant with the appropriate mechanic's lien release or waiver and affidavit as required by the State Mechanic's Lien Statutes of Indiana, Kentucky and Ohio, upon receipt of said joint check. Debtor shall immediately endorse and deliver said check to the designated supplier, material men, subcontractor or laborer."

Contractors Materials Company (hereafter CMC) was a supplier of debtor and furnished concrete for a project on which Metro was the general contractor, and debtor was the concrete subcontractor. The parties agree that there remains unpaid to CMC the amount of $2,675.19 for materials supplied by CMC to the project on which Metro was the general contractor. Such material was furnished prior to the conversion date of the bankruptcy case. CMC filed the present motion, asserting that it was entitled to be paid such remaining amount by Metro pursuant to the September 13, 1984 Entry. Metro resists this result, contending that the conversion to chapter 7 rendered that Entry ineffective, so that thereafter the obligation of Metro was only to the party with which it had a contractual relationship, the debtor, in whose shoes the trustee in bankruptcy now stands.

A further complication is that a cash collateral order was entered in the chapter 11 case on August 9, 1984, a provision of such order being to grant secured status to the Huntington National Bank (hereafter Bank) with respect to accounts receivable of debtor. Because Bank is secured by accounts receivable, the bankruptcy trustee has declined to assert any interests in the amount here in question. The Bank takes a position consistent with that of Metro that the conversion of the case to chapter 7 vitiated the Order of September 13, 1984 in the adversary proceeding, so that any obligation of Metro ran only to its subcontractor, the debtor herein, and payment should be made by Metro to the Bank on the account receivable.

So that the positions of the parties are clear, we note that while both Metro and Bank agree that the money owing by Metro is owed to debtor, Metro and Bank disagree as to the obligation of Metro which arises thereby. Metro states that if the money is owed to its subcontractor, the debtor, then Metro has a right to set off the amount owed from the claim which Metro is asserting against debtor. The Bank does not accept this position, but contends that if we rule that the money is owing to debtor, then it should be paid to Bank because it comprises collateral of Bank. We have reached the conclusion that the law as well as equitable considerations compel us to hold that the position of CMC is correct, and that Metro should be ordered to pay the amount in controversy to CMC.

■ Metro and debtor had a common interest at the time that debtor was operating in chapter 11, in seeing to it that debtor complete its obligations on the project for which it had entered into a subcontract with Metro. Metro had been refusing to make payments to debtor, and in order to break the impasse, the parties entered into an agreement which they submitted to the court as an Agreed Entry, which enabled

the project to go forward. In reliance on that agreement as embodied in the Agreed Entry, CMC furnished materials. CMC is entitled to be paid the amount owed it for materials delivered on the strength of the Agreed Entry either (1) as a third party beneficiary of that agreement, or (2) because by the agreement embodied in that Entry, a plan to bypass the bankruptcy estate was put in place, giving rise to a direct obligation on the part of Metro to suppliers such as CMC.

■ Metro contests this outcome saying that the conversion to chapter 7 superseded or invalidated the Agreed Entry. Something that does happen upon a conversion, is the supplanting of the debtor in possession by a trustee. Unless the trustee has some grounds for avoiding the arrangement entered into by the debtor in possession, we see no reason, and none has been suggested, why such arrangements should terminate by operation of law. More specifically, Metro and Bank argue that it was an effect of the conversion to create an asset of the estate, an account receivable running from Metro to debtor. At the same time, both admit, perhaps tacitly, that because of the Agreed Entry, prior to the conversion there was no direct obligation running from Metro to debtor with respect to obligations to suppliers such as CMC. We see no reason, however, why conversion should have caused a change in the relations of these three parties which arose by reason of the Agreed Entry.

While *In re Flooring Concepts, Inc.*, 37 B.R. 957, 11 B.C.D. 890 (9th Cir.B.A.P. 1984) addressed a question with which we are not directly concerned here, whether there was a preference in a situation involving parties in the positions of those before us, that case does support the proposition that in a transaction such as that which occurred here, it is possible to create an obligation in which money is to be paid by a third person (here Metro) to a creditor of debtor, and that obligation is not part of the bankruptcy estate. That is what the agreement contained in the Agreed Entry did, and nothing has been shown or suggested to us which did or ought to change the obligation of Metro which arose thereby.

Accordingly, the application of CMC is granted.

SO ORDERED.