**In re TRI–CO., INC., Debtor.**

**TRI–CO., INC. Plaintiff,**

**v.**

**STAR BUILDING SYSTEMS, Defendant.**

**Bankruptcy No. 96–40340–JFQ.
Adversary No. 97–4418.**

United States Bankruptcy Court,
D. Massachusetts.

May 14, 1998.

Thomas F. Maffei, Choate, Hall & Stewart, Boston, MA, for Star Building Systems.

Mark S. Foss, Peters, Massad & Rodolakis, Worcester, MA, for Richard R. Erricola, Trustee.

R. Arlen Johnson, Milford, MA, for Tri-Co., Inc.

### OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Tri–Co., Inc. (the "Debtor"), as debtor in possession, has brought this suit under section 549(a) of the Bankruptcy Code to recover an unauthorized (and involuntary) postpetition transfer of property of the bankruptcy estate [1]. The case raises these questions: When a party owing a prepetition debt to a bankruptcy estate makes a postpetition payment to a creditor of the debtor instead of the bankruptcy estate, does this bring about a transfer of property of the estate? Does it make any difference that the paying party also owed an obligation to the recipient of the funds?

The Defendant, Star Building Systems, moves to dismiss the complaint under Fed.

R.Bankr.P. 7012(b)(6) for failure to state a claim upon which relief can be granted. The ease having since been converted to chapter 7, the motion is opposed by the chapter 7 trustee, Richard Erricola (the "Trustee"). Because the Defendant's memorandum on the motion attaches a letter not referred to in the complaint, I treat the motion as one for summary judgment. Fed.R.Bankr.P. 7012(b).

The complaint and letter disclose the following: The Debtor entered into a prepetition subcontract with L. Addison & Associates, Inc. ("Addison"), who was the general contractor under a contract with the United States for work to be done at Otis Air National Guard Base in Massachusetts. As of the chapter 11 petition filing date, January 24, 1996, Addison owed the Debtor $16,678.64 under the subcontract. The Debtor, in turn, owed the Defendant $6,382.74 for materials and services furnished under a sub-subcontract on the same job. On February 12, 1996, with knowledge of the chapter 11 filing, Addison paid the Defendant $6,382.74 in satisfaction of the debt owed the Defendant by the Debtor. Previously, by letter dated May 18, 1995, Addison had agreed with the Defendant to make payments in the form of checks made payable to both the Debtor and the Defendant.

The complaint is not specific on the transfer alleged to have taken place. It appears to assert that Addison's payment effected an involuntary transfer from the bankruptcy estate to the Defendant of $6,382.74 of the estate's account receivable due from Addison, and the proceeds thereof. The Bankruptcy Code broadly defines "transfer." "[T]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property. . . ." 11 U.S.C. § 101(54) (1994).

An involuntary transfer of a receivable through garnishment of a bank account is of course common. It is hornbook law that a

---

1. Section 549(a) provides as follows:

Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court. 11 U.S.C. § 549(a) (1994).

creditor's successful garnishment of its debtor's bank account operates as a transfer to the creditor of the receivable represented by the account, and the bank (the debtor's debtor) is thereafter free from liability to the debtor. Although there is normally a time lag between initial garnishment and ultimate payment, it should make no difference that the transfer of the debt and its proceeds occur simultaneously, as was allegedly done here.

Here, however, we have a voluntary payment by a debtor's debtor. To effect a transfer of the $6,382.74 receivable, Addison's payment must at the very least bring about a corresponding reduction in its debt to the estate. A reduction would occur only if the payment gave Addison a claim against the estate which Addison can recoup against the debt it owes the estate. Addison is not a party to this suit, so I cannot and do not adjudicate its rights. Yet it is necessary to examine those rights in summary fashion to determine whether the payment operated as a transfer to the Defendant of the estate's receivable. If the estate retains a claim against Addison for the amount of the payment, the receivable was obviously not transferred by the payment.

■■ A voluntary payment conferring a benefit on another creates a claim for restitution in only limited circumstances. I have been directed to no Massachusetts decision on point. The Restatement of Restitution phrases the governing principle in these words:

> A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other of third persons. *Restatement of Restitution § 112 (1937).*

Section 112 refers only to the necessity of protecting the interests of the party receiving the benefit or those of "third persons," not the interests of the person conferring the benefit. No rationale for such a distinction suggests itself, and it seems doubtful a distinction was intended. Addison should have a claim against the estate for the benefit

conferred if the payment was necessary to protect Addison's interests.

The payment was necessary to protect Addison's interest, for two reasons. First, Addison was justified in believing it had acquired a measure of liability to the Defendant by reason of Addison's letter agreeing to make checks payable to the Debtor and the Defendant jointly. The precise nature and extent of that liability is immaterial. What matters is that the payment not be officious. *See Restatement of Restitution* § 112 cmt. a (1937).

Second, Addison was contingently liable on the Debtor's liability to the Defendant. All public works contracts with the United States exceeding $25,000 must be secured by a payment bond, with satisfactory surety, for the protection of parties supplying labor or materials on the job. 40 U.S.C. § 270a (1994). Therefore, although not expressly stipulated, there was a surety on this job. If, absent this payment in question, the surety would have been required to pay the Defendant, the surety would be entitled to reimbursement from Addison. *Restatement of Restitution* § 76 (1937).

In summary, Addison's payment, not being officious, appears to have reduced its indebtedness to the Debtor in the amount of Addison's resulting rights of recoupment. For present purposes I assume Addison has full recoupment rights by reason of the bankruptcy estate having been benefitted by the full amount of the payment, notwithstanding the likelihood that the estate will pay creditors less than 100% of their claims. With that assumption, the estate lost a $6,382.74 receivable.

■■ That does not mean, however, that the payment operated as a transfer of the receivable (and its proceeds) to the Defendant. The payment would perhaps effect an involuntary and indirect transfer if its sole function was to pay the Debtor's indebtedness to the Defendant. As we have seen, however, Addison's financial interests benefitted from the payment. Addison was thereby relieved of its own liability under the bond and the letter. It is thus unrealistic to treat the payment as a transfer of the receivable

and its proceeds. The payment was in substance a satisfaction of Addison's liabilities to the surety and the Defendant. *Mason v. Zorn Indus., Inc. (In re Underground Storage Tank Technical Servs. Group, Inc.)*, 212 B.R. 564 (Bankr.E.D.Mich.1997) (prepetition payment by debtor's debtor not a transfer of debtor's property because of payor's independent reimbursement liability under payment bond). I agree with the perceptive analysis of Judge Spector in *Mason*. *See also Crocker v. Braid Elec. Co. (In re Arnold)*, 908 F.2d 52, 55 (6th Cir.1990) (postpetition payment by general contractor to sub-subcontractor not a transfer of estate property because of general's independent obligation to recipient under the general contract and under "reasonable commercial expectations to see to the proper applications of construction funds").

The complaint contains no allegation that the funds used by Addison in making the payment constituted property of the Debtor's bankruptcy estate by reason of the Debtor's (and hence the estate's) right of control over the funds or otherwise. To the contrary, the payment is described as having been "received directly from [Addison]." Nor does the Trustee seek to establish by affidavit or discovery that the funds were property of the estate. The reason for this void seems obvious. Payment of the debt of another typically depletes the property of the payor and not the party owing the obligation. *E.g., Mandross v. Peoples Banking Co. (In re Hartley)*, 825 F.2d 1067 (6th Cir.1987); *Brown v. First Nat'l Bank of Little Rock*, 748 F.2d 490 (8th Cir.1984); *Shaw Indus., Inc. v. Gill (In re Flooring Concepts Inc.)*, 37 B.R. 957 (9th Cir. BAP 1984); *Perlstein v. Lambert Coal Co. (In re AOV Indus., Inc.)*, 64 B.R. 933 (Bankr.D.C.1986). There would perhaps be a closer question on ownership of the funds if the check had been payable to the Defendant and the Debtor jointly, although even in that situation courts have applied the "earmarking" doctrine in preference cases to hold the funds were not the debtor's property. *See, e.g., Jensen v. Pen Air Conditioning, Inc. (In re Winsco Builders, Inc.)*, 156 B.R. 98 (Bankr.M.D.Fla.1993).

Recognizing that the motion is in reality a motion for summary judgment, the Trustee asks in his memorandum for a continuance in order to conduct discovery. With respect to a motion to dismiss under Rule 7012(b)(6) which refers to matters outside the pleadings, Rule 7012(b) says that "all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed.R.Bankr.P. 7012(a). In making his request, however, the Trustee has not complied with Rule 56, as incorporated in Bankruptcy Rule 7056. The request should be made by way of affidavit. Fed. R.Bankr.P. 7056(f).

Nor is there merit to the request. The Trustee does not seek discovery concerning ownership of the funds used for the payment. Rather, the Trustee says "there is an issue of fact as to whether the Defendant had an independent right to receive the funds." The Trustee views the two party check arrangement as negating such an independent right because of the necessity that the Debtor's name also appear on the check. It is immaterial whether or not the Defendant had a right to receive a check solely in its own name. What matters, as discussed, is the existence of *any* obligation owed by Addison to the Defendant.