328 B.R. 430 (2005)
In re McSHANE, INC. t/a MCS, Debtor.
McShane, Inc. t/a MCS, Plaintiff,
v.
Monumental Supply Co., Inc., Defendant.
Bankruptcy No. 02-54385-SD, Adversary No. 04-01313.
United States Bankruptcy Court, D. Maryland.
June 15, 2005.
*431 Curtis C. Coon, Esq., Law Office of Curtis C. Coon, LLC, Towson, MD, debtor.
MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
E. STEPHEN DERBY, Bankruptcy Judge.
Pending before the Court are cross motions for summary judgment filed by Plaintiff McShane, Inc. t/a MCS ("MCS") and Defendant Monumental Supply Co., Inc. ("Monumental"). The parties have filed responses and replies to the summary judgment motions, and a hearing will not materially aid the court in resolving the motions. For reasons stated below, the court will grant summary judgment in favor of Defendant Monumental and deny summary judgment as to Plaintiff MCS.

I. BACKGROUND AND RELEVANT FACTS

The material facts are not in dispute. In October, 2001, general contractor Kamtech, Inc. ("Kamtech") entered into an Agreement with Wells Fargo Northwest, N.A., for Procurement, Construction and Installation Services for the Possum Point Generation Facility ("Construction Contract") in Virginia ("Possum Point Project").
Pursuant to the Construction Contract, Kamtech was responsible for paying subcontractors and vendors and for ensuring that subcontractors paid their subcontractors and suppliers. Construction Contract, Section 10.2, attached as Exhibit A to Monumental's Motion for Summary Judgment. Section 10.2 states as follows:
Payments to Subcontractors and Vendors. Upon receipt of payment from, or on behalf of, Owner, Contractor shall promptly pay each Subcontractor and Vendor per its agreements with its Subcontractors and Vendors, out of the amount paid to Contractor on account of Subcontractor's or Vendor's work. Contractor shall require each Subcontractor or Vendor to make similar payments to its Subcontractors and Vendors. Except as otherwise provided in this Agreement, Owner shall have no right or obligation to pay, or cause the payment of, any money to any Subcontractor or Vendor or any other person acting through, under or on behalf of Contractor except as may otherwise be required by Laws and Codes, and then subject to Contractor's indemnity obligations under this Agreement. Notwithstanding the foregoing, any payments made by Owner to any Subcontractor or Vendor as permitted in this Agreement shall be reimbursed by Contractor to Owner or may be offset by Owner against, and deducted from, any future payments due to Contractor from Owner.
Construction Contract, § 10.2. The Construction Contract also provides that the Owner could withhold final payment from Kamtech under the Construction Contract to protect the Owner from losses from, inter alia, mechanics liens, unless Kamtech posted a performance bond under which such obligations would be paid. Construction Contract, § 11.7 Payments Withheld. Section 11.8.2 specifically authorized Kamtech to obtain a performance bond to indemnify the owner and lenders against mechanics liens in order to obtain final payment on the Project. If such a Performance Bond was posted, final payment to Kamtech could not be withheld.
Indeed, Kamtech executed a Payment Bond with United States Fidelity and *432 Guaranty ("USFG") to guaranty performance of the Construction Contract ("Payment Bond"). Pursuant to the Payment Bond, and as the joint and several co-obligor with USFG, Kamtech became obligated to pay for all "labor, materials, and equipment furnished for use in performance of the Construction Contract . . .". Payment Bond, ¶ 1, attached to Monumental's Motion for Summary Judgment, Exhibit A (Construction Contract). The Payment Bond creates a direct obligation for Kamtech to make payment to all Claimants, which are defined as "persons or entities having a direct contract with [Kamtech] or with any subcontractor of [Kamtech] to furnish labor materials or equipment for use in the [Construction] Contract." Payment Bond, ¶ 15. This direct obligation to any Claimant under the Payment Bond was only satisfied, and became null and void, if and when Kamtech promptly made payment, directly or indirectly, for all sums due. Payment Bond, ¶ 3.
On October 26, 2001 Kamtech executed a subcontract with MCS for MCS to supply piping materials for the Possum Point Project ("MCS Subcontract"). The MCS Subcontract was amended on several occasions to increase the amount of piping to be installed and the price to be paid. In turn, MCS executed a contract with Monumental for the supply of materials to MCS related to the MCS Subcontract ("Monumental Materials Contract").
As of February 7, 2002, Kamtech had paid Monumental $44,423.56, leaving a balance under the MCS Subcontract of $118,120.26. On or about February 18, 2002, Monumental notified Kamtech directly that Monumental had not been paid approximately $84,300 under the Monumental Materials Contract, and that unless Kamtech made payment Monumental would enforce mechanics lien rights against the project property. The lien waiver Kamtech requested from MCS in February, 2002 specifically removed the certification that MCS had paid all sums due for materials and supplies furnished or supplied by of for MCS for the Possum Point Project. MCS Lien Waiver, attached as Exhibit C to Monumental's Motion for Summary Judgment.
On March 14, 2002, Kamtech, MCS and Monumental Executed a Settlement Agreement and Release ("Settlement Agreement") relative to the Possum Point Project. Pursuant to the Settlement Agreement, Kamtech agreed to pay $80,000 directly to Monumental and $38,120 to MCS. The Settlement Agreement released all claims of Monumental and MCS against Kamtech and the Possum Point Project. Kamtech thereafter drafted a check in the amount of $80,000, which was presented to Monumental on or around March 19, 2002.
MCS filed for protection under Chapter 11 of the Bankruptcy Code on March 18, 2002. In this adversary proceeding, MCS seeks recovery of the $80,000 paid from Kamtech to Monumental as an avoidable preference under 11 U.S.C. Section 547(b). Alternatively, MCS maintains that the payment was a post-petition transfer of estate property in violation of 11 U.S.C. Section 549(a). Monumental takes the position that the $80,000 payment was neither property of the debtor nor property of the estate based on Kamtech's independent obligation to ensure payment to all suppliers, and that as a result the payment was neither a pre-petition preference nor a post-petition transfer of estate property. MCS and Monumental have both filed motions for summary judgment.

II. ANALYSIS

A. Summary Judgment Standard
Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, *433 and admissions on file, together with the affidavits, if any," demonstrate the absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56( c), made applicable to these proceedings by Fed. R. Bankr.P. 7056. The Court may grant summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Preston v. Mountainside Transport, Inc., 795 F.Supp. 159, 160 (D.Md.1992), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Permissible inferences to be drawn from the underlying facts are viewed in the light most favorable to the nonmoving party. Miller v. Federal Deposit Insurance Corporation, 906 F.2d 972, 973-74 (4th Cir.1990), citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
In this case, there is no dispute as to the material facts and the issue presented is one that may be decided as a matter of law. Therefore, summary judgment is appropriate.
B. MCS' Avoidance Claims Against Monumental Under Sections 547(b) and 549(a)
11 U.S.C. § 549, one of the trustee's avoiding powers, provides for the recovery of post-petition transfers of estate property. Section 549(a) provides that the trustee may avoid post-petition transfers that have not been authorized by the Court or that is authorized only under Section 303(f)[1] or 542( c).[2] For purposes of this case, the key element is that any such transfer must be of property of the estate. 11 U.S.C. Section 549(a).
Section 541 defines property of the estate as all equitable or legal interest of the debtor in property as of the commencement of the case.[3]A fortiori property of the estate does not include property in which the debtor had no interest at the commencement of the case.
11 U.S.C. § 547, another one of the trustee's avoiding powers, provides for the avoidance of certain payments made by the debtor to non-insiders in the 90 days preceding a bankruptcy filing. Section 547(b) authorizes avoidance when the trustee shows that the transfer is one:
1. To or for the benefit of creditors;
2. For or on account of an antecedent debt owed by the debtor before such transfer was made;
3. Made while the debtor was insolvent;
4. Made on or within 90 days before filing of the petition;
5. That enables the creditor to receive more than such creditor would receive if the case was a case under Chapter 7, the transfer had not been made, and the creditor received a distribution in the Chapter 7 case.
11 U.S.C. § 547. It is axiomatic that to be avoidable the transfer must involve the Debtor's interest in property. Id. Thus, a transfer of money or property by a third person to a creditor of the debtor, that does not issue from property of the debtor, *434 is not a preference. See Collier on Bankruptcy, ¶ 547.03[2](15th Revised Ed.).
Monumental argues that the $80,000 Kamtech transferred to it was neither property of MCS if the transfer occurred pre-petition nor property of the estate if transferred post-petition. Thus, because MCS cannot meet one of the elements required under either § 547(b) or § 549(a), Monumental asserts that it is entitled to judgment as a matter of law. Monumental claims Kamtech had an independent obligation to pay Monumental, first because the Construction Contract executed by the owner and Kamtech and the Payment Bond executed by Kamtech made Kamtech liable for payment to Monumental in full, and second because Monumental's mechanic's lien rights against the property and other potential claims under Virginia law would ultimately have required the owner or USFG to pay Monumental and Kamtech to reimburse the payment. MCS counters that the funds transferred are part of the receivable owed by Kamtech to MCS, and that payment to Monumental resulted in either a preferential transfer or an unauthorized post-petition transfer. MCS further claims that there is no evidence that Monumental timely exercised its rights under applicable mechanic's lien law or under the Payment Bond, and as a result Kamtech had no obligation to pay the Monumental claim. The $80,000 payment was thus either MCS' property or the Estate's property, and it may be recovered for the benefit of creditors.
The case of In re Tri-Co, Inc., 221 B.R. 606 (Bankr.D.Mass.1998), and cited by Monumental in its motion for summary judgment, is instructive. In Tri-Co, the debtor subcontractor ("Tri-Co") had entered into a pre-petition subcontract with L. Addison and Associates, Inc. ("Addison"), the general contractor under a contract with the United States for work at an Air Force base. As of the filing date, Addison owed the debtor $16,678 and debtor owed Star Building Systems ("Star") $6,382 for materials furnished under a sub-subcontract. Prior to filing, Addison and debtor agreed to make payments with joint checks to debtor and Star. Post-petition, Addison paid Star directly the $6,382, and Tri-Co sued to recover the payment as an unauthorized post-petition transfer of a receivable owed to the debtor under 11 U.S.C. § 549(a). The court found that the payment was necessary to protect Addison's interests because (1) it may have acquired liability to Star by agreeing to the joint check arrangement; and (2) because Addison was contingently liable to Star through a surety bond, a requirement of United States government projects which would have entitled the surety to reimbursement from Addison had the surety been required to pay Star absent the payment at issue. Tri-Co, 221 B.R. at 608. The court concluded that the payment was not a transfer of the debtor's receivable, and stated:
The payment would perhaps effect an involuntary and indirect transfer if its sole function was to pay the Debtor's indebtedness to the Defendant. As we have seen, however, Addison's financial interests benefitted from the payment. Addison was thereby relieved of its own liability under the bond and the letter. It is thus unrealistic to treat the payment as a transfer of the receivable and its proceeds. The payment was in substance a satisfaction of Addison's liabilities to the surety and the Defendant. Mason v. Zorn Indus., Inc. (In re Underground Storage Tank Technical Servs. Group, Inc.), 212 B.R. 564 (Bankr.E.D.Mich.1997) (prepetition payment by debtor's debtor not a transfer of debtor's property because of payor's independent reimbursement liability under payment bond). I agree with the *435 perceptive analysis of Judge Spector in Mason. See also Crocker v. Braid Elec. Co. (In re Arnold), 908 F.2d 52, 55 (6th Cir.1990) (postpetition payment by general contractor to sub-subcontractor not a transfer of estate property because of general's independent obligation to recipient under the general contract and under "reasonable commercial expectations to see to the proper applications of construction funds").
In re Tri-Co., Inc., 221 B.R. 606, 608-09 (Bankr.D.Mass.1998). Because the funds did not constitute property of the estate, Tri-Co's complaint was dismissed. Id. At 609.
The rationale espoused by the Tri-Co court is applicable to claims under § 547(b) and § 549(a). See In re Flooring Concepts, Inc., 37 B.R. 957 (9th Cir. BAP 1984). In In re Flooring Concepts, debtor was a subcontractor for the installation of carpet at an apartment building project. Debtor entered into a contract with a materialman to provide the carpeting. Debtor failed to pay the materialman and the materialman served a preliminary notice under California law of its mechanics lien. Thereafter, the general contractor, debtor and the materialman entered into an agreement ("Three Way Agreement") wherein the materialman would not record a mechanics lien and the general contractor would pay the monies owed directly to the materialman. The general contractor thereafter made direct payments to the materialman on a pre-petition and post-petition basis. Debtor sought to avoid the payments under §§ 547(b) and 549(a). The Court found that the Three Way Agreement, whereby the general contractor and the materialman exchanged independent consideration, created the general contractor's obligation to pay the materialman directly and the materialman's obligation to forbear from recording a mechanic's lien. In re Flooring Concepts, Inc., 37 B.R. at 961. The court held that payments "made by a contract debtor of a bankrupt to a creditor of the bankrupt do not become part of the bankruptcy estate where there is an independent obligation on the part of the debtor to pay the creditor," regardless whether the general contractor's duty to pay the materialman is contractual or statutory. In re Flooring Concepts, Inc., 37 B.R. at 961, citing Keenan Pipe & Supply Co. v. Shields, 241 F.2d 486 (9th Cir.1956); Selby v. Ford Motor Co., 590 F.2d 642 (6th Cir.1979). The court concluded that because the pre-petition transfers were not of property of the debtor and the post-petition transfer was not of property of the estate, Debtor's avoidance claims failed. In re Flooring Concepts, Inc., 37 B.R. at 963-64.
In this case, because Kamtech had an independent obligation to Monumental, the payment of $80,000 was neither property of MCS nor property of the estate. Section 10.2 of the Construction Contract obligated Monumental to deliver the completed project to the owner free of all claims, including mechanics liens. The owner could withhold payment from Kamtech if the project was not delivered free of liens and claims, absent a performance bond. Id. at §§ 11.7 and 11.8.2. Kamtech obtained the Payment Bond, which directly obligated Kamtech, as well as USFG, to pay for all labor, materials and equipment furnished for use in the performance of the Construction Contract. Payment Bond, ¶ 1. Importantly the Payment Bond, while containing obligations owed by Kamtech to the owner, also specifically and directly obligated Kamtech to pay all subcontractors and material suppliers such as Monumental. Payment Bond, ¶¶ 1, 3, 15.
It is undisputed that Monumental, a material supplier to MCS, was not paid approximately $80,000 owed to it by MCS. *436 Upon its failure to pay Monumental, MCS' interest in receiving the $80,000 from Kamtech ceased, and MCS retained merely an interest in seeing payment made, in fulfillment of the Monumental Supply Contract, to Monumental. Concurrently, Monumental obtained a right to these monies due, pursuant to the terms of the Settlement Agreement and, as a third party beneficiary, the terms of the Payment Bond, directly from Kamtech. Thus, payment from Kamtech was of neither MCS' property nor property of the estate, but was rather payment of a direct obligation owing by Kamtech to Monumental.
Monumental also likely held rights against the property under applicable mechanics lien law, and against the owner or Kamtech under Virginia statutory[4] or common law[5] which were released under the Settlement Agreement. Monumental had provided notice to Kamtech of the non-payment and its intent to pursue mechanics lien remedies. See Letter dated February 18, 2002 from counsel for Monumental to Kamtech, attached as Exhibit D to Monumental's Motion for Summary Judgment. While many if not all of Monumental's rights against Kamtech, the owner, and the property existed at the time the Settlement Agreement was executed and may have provided independent consideration to Kamtech for payment of the $80,000, see In re Flooring Concepts, 37 B.R. 957, 961 (9th Cir. BAP 1984), neither MCS nor Monumental has presented any facts by affidavit, attachment or otherwise to allow the court to determine the status of such claims. The court need not decide these issues because the court holds that Kamtech's execution of the Payment Bond required Kamtech to make payment to Monumental, not on behalf of MCS or the estate, but as an independent obligation owed by Kamtech to Monumental. See In re Tri-Co., Inc., 221 B.R. 606, 608-09 (Bankr.D.Mass.1998).
In sum, the Court concludes that the payment from Kamtech to Monumental was made on an independent obligation between Kamtech and Monumental separate and distinct from any amount or receivable claimed due by MCS from Kamtech. As a result, the payment of $80,000 was neither property of the Debtor nor property of the estate, and MCS' claims for preferential transfer under § 547(b) and for an unauthorized post-petition transfer under § 549(a) fail as a matter of law.[6] Summary judgment shall therefore be entered in favor of Monumental.
C. MCS' Motion for Summary Judgment Against Monumental
MCS has also moved for summary judgment on both claims under 11 U.S.C. §§ 547(b) and 549(a). MCS argues that the undisputed facts show that it has met all necessary elements, as outlined previously in this Order, supra, required to prove its preference claim under § 547(a) and its post-petition transfer claim under § 549, and as a result it is entitled to judgment in this matter as a matter of law.
*437 However, the court has determined that the funds at issue in this case were not property of the Debtor for purposes of MCS' claim under § 547(b) nor property of the estate for purposes of MCS' claim under § 549(a). Because MCS cannot prove one of the elements necessary to prevail on each of its claims, MCS' motion for summary judgment will be denied.
Therefore, by the United States Bankruptcy Court for the District of Maryland, it is:
ORDERED that McShane, Inc.'s Motion for Summary Judgment is DENIED; and it is
FURTHER ORDERED that Monumental Supply Company's Motion for Summary Judgment is GRANTED; and it is
FURTHER ORDERED that final judgment is GRANTED in favor of Defendant Monumental Supply Company; and it is
FURTHER ORDERED that the Joint Motion to Convert Trial Date to Motion for Summary Judgment Hearing is DENIED as moot; and it is
NOTES
[1] This section is applicable in involuntary cases.
[2] This section is applicable in turnover actions by parties who transfer estate property without knowledge of debtor's bankruptcy.
[3] Exceptions to the definition of property of the estate, none of which are relevant to the facts of this case, are contained in 11 U.S.C. § 541(b) and (c)(2). See 11 U.S.C. § 541(a).
[4] See Monumental's Motion for Summary Judgment, at 11-12, fn 5-6, for a recitation of Virginia Code on the rights of material men, and the corresponding obligation of general contractors such as Kamtech.
[5] For instance, even if all other claims were foreclosed, Monumental may still have held a claim against the owner for unjust enrichment or quantum meruit. See Lyons Const. Co. v. TRM Development Corp., 25 Va. Cir. 352, 1991 WL 835247 (Va. Cir. Ct.1991); In re Twin B Auto Parts, Inc., 271 B.R. 71, 84 (Bankr.E.D.Va.2001).
[6] Because the result is the same under each section, the Court need not determine whether the transfer was made pre-petition or post-petition. Regardless which section is applied, Monumental is entitled to summary judgment.